**J. Melvin FREMONT, Plaintiff,**

v.

**E.I. DuPONT DeNEMOURS & Co., Defendant,**

**No. Civ.A. 97–1764.**

United States District Court, E.D. Pennsylvania.

Dec. 31, 1997.

Allen H. Tollen, Media, PA, for Plaintiff.

David S. Fryman, Ballard, Spahr, Andrews and Ingersoll, Philadelphia, PA, for Defendant.

## OPINION

LOUIS H. POLLAK, District Judge.

This is an action for breach of contract, originally filed in the Court of Common Pleas of Delaware County, Pennsylvania. Defendant DuPont DeNemours & Co. ("DuPont") removed on March 11, 1997, basing jurisdiction on diversity of citizenship. Before the court is DuPont's motion for dismissal or, in the alternative, for summary judgment. Since the parties have made reference to materials outside the pleadings, and those materials will be considered in resolving this motion, the motion will be considered below solely as one for summary judgment.

## Factual Background

As to the following facts there is no disagreement between the parties. Plaintiff J. Melvin Fremont worked as a chemist for DuPont from 1953 to 1990. Fremont specialized in the use of catalysts in the manufacture of chemical compounds, including a compound called butanediol. Since 1971, DuPont has owned a patent for a manufacturing process for butanediol that used a catalyst to produce the chemical compound under safer conditions than otherwise obtained in the manufacture of the compound. In 1984, Fremont learned that a competitor, GAF Chemical Corp. ("GAF"), also held a patent for a catalyst-based manufacturing process for butanediol. Fremont informed DuPont of this possible patent infringement and suggested that DuPont bring a patent infringement suit against GAF. In 1988, after further investigation, DuPont filed a patent infringement action against GAF in the United States District Court for the District of Delaware.

In the course of litigation, DuPont realized that it required the services of a consultant to examine GAF documents and conduct related investigations. GAF, however, would not permit any current DuPont employee to review its documents. Fremont consequently agreed to retire from DuPont in order to work as the company's consultant in the patent litigation. DuPont agreed to pay Fremont, on a per diem basis, for his work as a consultant on the case. DuPont also agreed that if the litigation should conclude favorably for DuPont, Fremont would be eligible for a bonus equaling 1% of the award. In 1991, on the advice of in-house counsel, DuPont settled the lawsuit with GAF. The settlement involved no cash, but an agreement between the companies to exchange quantities of a chemical product, an agreement that promised to save DuPont on shipping charges over time. DuPont decided to pay no bonus to Fremont or any other DuPont employee involved in the litigation. The portion of the agreement concerning Fremont's eligibility for a bonus in the event that the litigation concluded favorably forms the subject of the instant dispute.

## Discussion

### A. Governing Law

Preliminarily, the court must determine the law to be applied in this diversity action. A federal court deciding a case for which state law provides the rule of decision applies the conflicts rules of the state in which it sits. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Under Pennsylvania choice-of-law rules, the substantive law to be applied is that of the state which has the most significant interest in having its law applied, a determination informed by examination of significant contacts. *Complaint of Bankers Trust Co.*, 752 F.2d 874, 882 (3d Cir.1984).

Before engaging in this interests-contacts analysis, however, the court must first determine whether a "true conflict" or a "false conflict" exists. *LeJeune v. Bliss–Salem, Inc.*, 85 F.3d 1069, 1071 (3d Cir.1996); *Cipolla v. Shaposka*, 439 Pa. 563, 267 A.2d 854 (1970). A true conflict exists if the competing jurisdictions each have interests that would be impaired by the application of another jurisdiction's law. A false conflict exists if only one jurisdiction has interests that would be impaired or if there is no material difference in the law of the jurisdictions implicated. *In re Complaint of Bankers Trust Co.*, 752 F.2d 874, 882 (3d Cir.1984). If only a "false conflict" exists, the conflicts analysis is moot. *Lucker Manufacturing v. Home Insurance Co.*, 23 F.3d 808, 812 (3d Cir. 1994).

As a threshold matter, at least a preliminary examination of the relevant contacts is necessary to determine which jurisdictions are implicated. In its motion for summary judgment, defendant states that there are contacts pointing toward both Delaware and Pennsylvania (without specifying what those contacts are) and states that the outcome is the same under either state's law. Plaintiff, without explanation, cites to both Pennsylvania and Delaware cases. Although the precise alignment of all the various contacts is not readily apparent from the record, this much is clear: Pennsylvania and Delaware are the only jurisdictions whose contract law is implicated here. Plaintiff is a resident of

Pennsylvania and defendant is a Delaware corporation that does business in Pennsylvania. Much, if not all, of the contract's performance appears to have been in Delaware. Although the location of the negotiations and the agreement is uncertain, it appears that these activities were carried out in Pennsylvania, Delaware, or both.

 With the alternatives of Pennsylvania and Delaware in mind, I now turn to an examination of whether there is a true conflict in this case. Since there is no material difference in the parties' rendering of the express terms of the contract, the only significant legal issue raised is the operation vel non of the duty of good faith and fair dealing. Under Delaware law, as interpreted by Delaware Supreme Court, the duty of good faith and fair dealing clearly attaches to all contracts. *See Pierce v. International Ins. Co. of Illinois,* 671 A.2d 1361, 1366 (De.1996) ("So that the reasonable expectations of parties to a contract will not be defeated, we have held that a duty of good faith and fair dealing attaches to every contract, and this duty cannot be disclaimed.") (footnote omitted).

The precise extent to which Pennsylvania law extends the duty of good faith and fair dealing, however, is the subject of a degree of uncertainty. In support of the proposition that the duty applies in this case, plaintiff argues that the duty inheres in every contract, citing a diversity case from this district with language to that effect, *Kedra v. Nazareth Hospital,* 868 F.Supp. 733, 737 (E.D.Pa. 1994) (Dalzell, J.). As the Pennsylvania Supreme Court has not spoken on the issue, this court's predictive inquiry must be informed by an examination of the relevant intermediate appellate decisions. *Rolick v. Collins Pine Co.,* 925 F.2d 661, 664 (3d Cir .1991). It is true that the Pennsylvania Superior Court has on several occasions stated that the duty of good faith and fair dealing inheres in every contract. *See, e.g., Somers v. Somers,* 418 Pa.Super. 131, 613 A.2d 1211, 1213 (1992); *Liazis v. Kosta, Inc.,* 421 Pa.Super. 502, 618 A.2d 450, 454 (1992), *allocatur denied sub nom. Tantaros v. Liazis,* 536 Pa. 630, 637 A.2d 290 (1993); *Germantown Mfg. Co. v. Rawlinson,* 341 Pa.Super. 42, 491 A.2d 138 (1985). The Superior Court, however, has not been entirely univocal on this issue. In *Creeger Brick & Bldg. Supply Inc. v. Mid–State Bank & Trust Co.,* 385 Pa.Super. 30, 560 A.2d 151, 153 (1989), the court, in holding that the duty of good faith could not defeat express contractual rights, stated that "the duty of good faith has been recognized in limited situations."

Although the *Creeger* court's statement might well be considered, in the parlance of the statistician, an "outlier," [1] it may not be wholly disregarded. The Third Circuit, in *Parkway Garage, Inc. v. City of Philadelphia,* 5 F.3d 685, 701 (3d Cir.1993), read *Creeger* for the proposition that "under Pennsylvania law, every contract does not imply a duty of good faith" and held that there is no implied duty of good faith where a plaintiff has recourse to an independent cause of action to vindicate the same rights with respect to which the plaintiff invokes the duty of good faith.[2] *See also Tycoon Corp. v. Quaker State Corp.,* Civil Action No. 95–2318, 1995 WL 732814 (E.D.Pa.1995)

---

**1.** The *Somers* court cited *Creeger* as supporting recognition of a general duty of good faith and fair dealing, but the *Creeger* opinion may be read as not in full harmony with the *Somers* reading. In *Seal v. Riverside Federal Savings Bank,* 825 F.Supp. 686, 698 (E.D.Pa., 1993), this court noted this apparent anomaly but read *Creeger* as standing for the unremarkable proposition that "the implied duty of good faith cannot defeat express contractual rights by imposing upon that party specific obligations that it is entitled, by express agreement, to resist." 825 F.Supp. at 699. Accordingly, this court ruled that the duty inhered in a contract in which a joint venture partner promised to procure funding for a development project where plaintiff alleged that the partner instead undermined the project by with-

holding critical information. *Id.* In making this prediction of Pennsylvania law, this court noted that the duty of good faith and fair dealing "has been embraced with increased vigor by the Pennsylvania Superior Court in recent years." *Id.* at 700. In light of this clarification, and the Superior Court's post–*Creeger* affirmation, in *Somers,* of a general duty of good faith, caution should be exercised before giving broad application to the *Creeger* court's suggestion that the reach of the duty of good faith is limited.

**2.** This court took a somewhat different approach in *Seal,* decided several months before *Parkway Garage. See supra* note 1:

(Dalzell, J.) (noting tension between *Parkway Garage* and the general drift of Pennsylvania Superior Court decisions).

 Thus according to the Third Circuit, whose predictions of state law this court is bound to follow, there are some contracts to which the duty does not attach. It is, however, readily apparent that the agreement at issue in this case- is the type of contract to which, under the pertinent Superior Court decisions, the duty would attach. Unlike the situation before the court in *Parkway Garage*, this is not a case in which·the plaintiff has an independent cause of action that he can invoke to vindicate the interests he asserts here. Furthermore, the plaintiff in this case is not, as was the plaintiff in *Creeger,* seeking to defeat express terms of a contract by means of the duty of good faith. Thus under both Delaware and Pennsylvania law, the duty of good faith applies to this contract, requiring reasonableness in DuPont's exercise of discretion to conduct the litigation and determine whether Fremont would receive a bonus.[3]

Accordingly, I conclude that there is no true conflict between Delaware and Pennsylvania law with respect to the duty of good faith and fair dealing.[4] Nor is there any other material issue of contract law that might necessitate conflicts analysis, as there is no actual dispute with respect to the terms of the agreement.[5] Accordingly, discussion turns to an examination of the terms of the

## B. The Terms of the Contract

As previously noted, the parties do not disagree about the essential characterization of the terms of the agreement. Plaintiff's complaint describes the agreement thus:

> [D]efendant reached an agreement with plaintiff whereby plaintiff, then aged 63, would be able to examine [GAF] records as an expert for defendant upon condition that plaintiff permanently cease employment with defendant by early retirement ... In consideration of plaintiff's giving up his long-term employment with defendant and retiring early, plaintiff was assured by defendant that he was recognized as having initiated defendant's bringing suit; and that even after retirement for these reasons, that for his essential contribution to the litigation, he would remain eligible for certain benefits and bonuses that most probably would follow from resolution of the litigation in a manner financially beneficial to defendant....

DuPont has no quarrel with this characterization of the express terms of the agreement and proffers copies of writings that tend to confirm plaintiff's characterization of the agreement. One of those, a letter from plaintiff to C.E. Lorenz, Vice President for DuPont's research division, merits quotation at length:

---

3. Defendant argues that no duties may be implied in this setting because there is an express contract. This contention rests on a misstatement of the issue and the law. It is true, as defendant points out, that an implied-in-law contract cannot coexist with an express contract. *See Zawada v. Pennsylvania Sys. Bd. of Adj.,* 392 Pa. 207, 140 A.2d 335 (1958). This statement is, however irrelevant, as an implied-in-law contract is not what is being urged here. A contract *implied in law, also known as a quasi-contract, is* not a "true contract" based upon promises, but a form of remedy (restitution or quantum meruit) awarded in the interests of justice when there is no enforceable agreement manifested between the parties. *See Chrysler Corp. v. Airtemp Corp.,* 426 A.2d 845, 854 (De.1980); *Lach v. Fleth,* 361 Pa. 340, 64 A.2d 821, 826 (1949); *Restatement (Second) of Contracts* § 4 cmt. b. What plaintiff urges here is not such an implied contract, but

the familiar concept of an implied duty attaching to true contracts.

4. Nor is there any apparent conflict regarding the content of the duty. Both jurisdictions recognize that the duty of good faith and fair dealing is Protean in nature, manifesting itself in different forms according to the contractual settings in which it arises. *See* section C *infra* for fuller explanation with authorities.

5. Plaintiff's memorandum of law in opposition to summary judgment urges, in the space of one page, a host of arguments relating to the writings proffered by defendants. As none of these arguments goes to a material issue in this case—i.e. one that would affect the outcome—there is no need to engage in any choice-of-law analysis with respect to them. For discussion of these arguments see section D *infra*.

I have been unable to reach Stanley Wreford and understand he may no longer be with DuPont. Stan called me in April of 1991 after announcement of settlement of the DuPont—G.A.F. suit in the Wilmington News. We discussed a possible bonus award since Skip Palmer's memo detailed terms of settlement in the range of four million dollars per year savings in the THF shipping costs through international transfer by G.A.F. for DuPont. Since then I have not heard whether or not such a reward was recommended.

As you may know I retired about one and a half years before I had planned in order to continue the lawsuit. I was not acceptable to G.A.F. as a court-ordered witness to review their documents while I was actively working in the field. Before such retirement I wanted assurances from Stan that I would be eligible for bonus awards if I retired and the suit was successful. A copy of that agreement is attached.

The "agreement" to which Fremont referred is a letter from Stanley Wreford to Fremont dated November 29, 1989 stating, in relevant part:

> You recently raised several questions relative to your eligibility and consideration for any Special Compensation Award that might arise from DuPont's winning or successfully settling the lawsuit against GAF corporation....
>
> This letter is to confirm that you are viewed as having played a key role in uncovering the alleged infringement, in advocating legal action, and in providing significant assistance relative to the technical aspects of the case. Further, should any Special Compensation Award arise from Du Pont's winning or successfully settling the aforementioned suit, you would be eligible for consideration, and if an award is granted, for receipt of such an award even as a pensioner.

Plaintiff does not challenge the provenance of this documentary evidence, but rather urges the court not to regard Fremont's letter to Lorenz and the attached letter from Wreford to Fremont as a contract. Specifically, plaintiff appears to argue that the letters do not pertain to the terms of the agreement but only to inquiries regarding Fremont's eligibility, *qua* retiree, for a bonus. Plaintiff advances no reason why this purported distinction in interpretation affects the understanding of the terms of the contract between Fremont and DuPont. Given that the substance of Fremont's claim is premised on that portion of the agreement relating to his post-retirement eligibility for a bonus, this putative distinction appears to be one without a difference. Furthermore, to the extent that plaintiff appears to be denying that Fremont's letter relates to the agreement at issue, the argument is undercut by the letter's explicit reference to the parties' understanding that in exchange for his services in connection with the GAF litigation, Fremont would be eligible for a bonus in the event that DuPont prevailed in the litigation or settled it successfully. Plaintiff's contention that there is a dispute regarding interpretation is thus meritless.

In sum, there is no dispute regarding the terms of the agreement. The parties both describe an agreement whereby plaintiff agreed to retire early in order to serve as a consultant in the DuPont–GAF patent suit, in exchange for which defendant agreed to (1) pay plaintiff a per diem consultant fee for his services (which the parties agree was paid), (2) acknowledge plaintiff's role in the litigation, and (3) consider plaintiff for a bonus if DuPont won or successfully settled the lawsuit. Hence there is no genuine issue of contract interpretation.

### C. Duty of Good Faith and Fair Dealing

Plaintiff urges that DuPont violated the duty of good faith in its conduct of the litigation. Plaintiff has sued for $1,948,000.00, a figure representing 1% of the sum of $194,-800,000.00, which plaintiff asserts would have been the recovery if DuPont had proceeded with the patent litigation. The gravamen of plaintiff's claim appears to be this: By settling the lawsuit as it did, rather than pursuing litigation to its conclusion or securing a more favorable settlement, DuPont deprived him of the benefit of the contract in bad faith by foreclosing the possibility that he would receive a bonus in the event of a more favor-

able outcome to the litigation. For the reasons set forth below, I conclude that, as a matter of law, there is no violation of the duty of good faith and fair dealing on this record.

The duty of good faith and fair dealing is not susceptible to precise definition and varies with the contractual contexts in which it arises. *See Somers v. Somers,* 418 Pa.Super. 131, 613 A.2d 1211, 1213 (1992); *DuPont de Nemours & Co. v. Pressman,* 679 A.2d 436 (De.1996). As Professor Robert Summers has usefully described it, the concept of good faith in contract law

> is an excluder. It is a phrase without general meaning (or meanings) of its own and serves to exclude a wide range of heterogeneous forms of bad faith. In a particular context the phrase takes on a specific meaning, but usually this is only by way of contrast with the specific form of bad faith actually or hypothetically excluded.

Robert S. Summers, *"Good Faith" in General Contract Law and the Sales Provisions of the Uniform Commercial Code,* 54 Va.L.Rev. 195, 201 (1968); *see also Pressman,* 679 A.2d at 443 (quoting Summers with approval); *accord Somers,* 613 A.2d at 1213; *Restatement (Second) of Contracts* § 205 cmt. d.

Although a precise, context-free definition of good faith is not readily discernible, courts have identified some forms of bad faith that are excluded; among them are "evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of power to specify terms, and interference with or failure to cooperate in the other party's performance." *Somers,* 613 A.2d at 1213 (citing *Restatement (Second) of Contracts* § 205 cmt. d). With these examples in mind, the record will thus be reviewed to determine whether any identifiable form of bad faith has been evidenced.

1. DuPont's Decision to Settle

Although plaintiff's arguments are not framed with the utmost clarity, plaintiff appears to be arguing that DuPont violated its duty toward plaintiff by (1) settling the case improvidently, as the corporation would have prevailed, and/or (2) settling the case without consultation with plaintiff or adequate consideration of his interests. I will address each of these arguments in turn.

To be sure, the duty of good faith required DuPont to exercise reasonable diligence in the prosecution of that suit. *See USX, Corp. v. Prime Leasing,* 988 F.2d 433, 438 (3d Cir.1993) (Duty of good faith implies a "duty to bring about a condition or to exercise discretion in a reasonable way."); *Wilgus v. Salt Pond Inv. Co.,* 498 A.2d 151, 159 (Del. Ch.1985) (The duty of good faith "requires a party in a contractual relationship to refrain from arbitrary or unreasonable conduct which has the effect of preventing the other party to the contract from receiving the fruits of the contract.") (citing *Restatement (Second) of Contracts* § 205 (1981)). This is a duty that was not explicitly bargained for, but is one that may be fairly implied to serve the spirit of the bargain, as it may be safely inferred that the parties would have contemplated reasonable efforts. Preliminarily, however, it should be noted that DuPont's own self-interest in the patent litigation would point it toward resolution of the patent suit on terms most favorable (or least unfavorable) to DuPont; thus DuPont's independent self interest is congruent with its duty of good faith. Absent any scintilla of evidence supportive of the highly improbable proposition that DuPont sabotaged the action contrary to its own interests, it is difficult to see how DuPont might have acted in bad faith by settling the lawsuit.

Furthermore, defendant has produced evidence indicating that, at minimum, the decision to settle the patent suit was not made in bad faith vis-á-vis Fremont. Defendant has submitted affidavits from David Gould, DuPont's lead in-house counsel in the lawsuit indicating that Gould advised settlement because of mounting legal expenses (which as of September 20, 1991 amounted to $1,118,-742.00) and weaknesses he perceived in the case. Plaintiff has offered nothing in support of the idea that this conduct was improper or unreasonable other than his assertion that DuPont would have won the lawsuit had it not settled.

Even assuming, *dubitante,* that Fremont is correct in his assertion that Gould overestimated the weaknesses in the case, the result would be no different. The duty of good faith in this context calls for reasonable, not extraordinary, efforts. *See USX, Corp.,* 988 F.2d at 438; *Wilgus,* 498 A.2d at 159.

Defendants have produced evidence indicative of such reasonable efforts, and plaintiff has failed to offer any contrary evidence. As noted above, the Gould affidavit indicates (1) that upon a consideration of the risks and expenses of litigation, DuPont's counsel advised settlement on terms that would, over time, at least cover costs already incurred, and (2) that DuPont acted accordingly. With evidence that DuPont settled according to the advice of counsel—and no evidence indicating that DuPont, in so doing, engaged in any identifiable form of bad faith such as was wilfully rendering imperfect performance or slacking off—no reasonable jury could conclude that DuPont breached its duty of good faith by deciding to settle the lawsuit.

■ Fremont also advances the contention that DuPont should have conducted the patent litigation "with plaintiff's interests in mind ." At the same time, however, plaintiff disavows any argument that he was entitled to control the litigation. In this situation, as pointed out previously, DuPont's own interests coincide with its duty to prosecute the litigation reasonably. Consequently, the duty urged by plaintiff—that defendant conduct its litigation "with plaintiff's interests in mind"—can only have meaningful effect if, in the event that the interests of plaintiff and DuPont diverge, the duty of good faith or another unspecified implied duty, required the corporation to conduct the litigation in Fremont's interests irrespective of the cost and risk carried by DuPont. This is so because it is only when the two interests diverge that keeping "plaintiff's interests in mind" would affect the outcome of the decision whether to press forward with litigation (and thus risk increasing sunk costs) or to settle in such a way as to break even or cut losses.

■ Plaintiff cites no authority supporting such an understanding of the duty of good faith. Nor can the court discern either reason or authority for the imposition of such a onerous duty. Implied duties of good faith are supplied "where it is clear that an obligation is within the contemplation of the parties at the time of the contracting or is necessary to carry out their intentions." *Slater v. Pearle Vision Center, Inc.,* 376 Pa.Super. 580, 546 A.2d 676, 679 (1988); *accord Dave Greytak Enterprises, Inc. v. Mazda Motors of America, Inc.,* 622 A.2d 14, 22–23 (Del.Ch.1992) ("[T]he duty arises only where it is clear from what the parties expressly agreed, that they would have proscribed the challenged conduct as a breach of the implied covenant of good faith had they thought to negotiate with respect to the matter."). Thus the duty of good faith is implied in order to conform to the reasonable expectations of parties. In Judge (later Justice) Cardozo's classic formulation: "A promise may be lacking, and yet the whole writing may be 'instinct with an obligation,' imperfectly expressed." *Wood v. Lucy, Lady Duff-Gordon,* 222 N.Y. 88, 118 N.E. 214 (1917). Consequently, it is fair to inquire whether such an obligation can, though imperfectly articulated, fairly be thought to have been within the contemplation of the parties.

In this case, it is clear that the duty as urged by plaintiff is neither one for which the parties would have bargained nor one that lay within the parties' reasonable expectations. Plaintiff would naturally incline to a much less risk-averse position than defendant with respect to the costs of the patent litigation since, of course, DuPont bore those costs. Because of the contingent nature of the agreement, plaintiff stands only to gain from pressing the litigation forward or holding out for a settlement well above the break-even point. Thus even an infinitesimal chance of success on the merits would be worth pursuing from plaintiff's standpoint, since plaintiff was not in the position of having to bear the risk of losing those sunk costs. In such a context as this one, a reading of the duty of good faith and fair dealing of the kind hinted at by plaintiff would do one of two things: (1) require DuPont to litigate to the utmost claims that have the slenderest chances of success, or (2) encour-

age DuPont to discontinue fulfillment of its duty of good faith to Fremont at the point at which its litigation costs begin to exceed the highest potential amount of Fremont's recovery for DuPont's breach of the duty. Such a perverse result could hardly be assumed to be intended by rational contracting parties; therefore, I conclude that no implied duty required DuPont to continue litigation in contemplation of plaintiff's interests when DuPont perceived that its interests favored settlement. In sum, I find no violation of the duty of good faith and fair dealing in DuPont's decision to settle its patent case with GAF.[6]

### 2. DuPont's Decision Not to Award a Bonus

 Plaintiff suggests that DuPont "arbitrarily den[ied] him the benefit of the bonus consideration." Although it is unclear what manner of contract violation plaintiff is alleging, this appears to be an argument that DuPont breached its duty of good faith by failing to consider Fremont for a bonus or by improperly denying him a bonus. These possibilities implicate, respectively, the "evasion of the spirit of the bargain" and the "abuse of power to specify terms" species of bad faith.

The contract specified that Fremont remained eligible for a bonus after retirement but was silent on the subject of whether DuPont was required to give the bonus issue any particular quantum of consideration. Consequently, the duty of good faith quite properly would supply a term requiring that DuPont exercise reasonable care in making the determination. *See Gilbert v. El Paso Co.,* 490 A.2d 1050, 1055 (1984) ("If one party is given discretion in determining whether the condition in fact has occurred that party must use good faith in making that determination."). Thus a review of the record with respect to the decision not to award a bonus

is necessary to determine whether DuPont failed to consider Fremont's potential entitlement to a bonus. Defendant has offered several documents—affidavits, a letter to Fremont, and an interoffice memorandum—indicating that DuPont officials both considered whether to award Fremont a bonus and supplied Fremont with reasons why the award was not granted. As plaintiff has pointed to no evidence suggesting otherwise, defendant has successfully demonstrated that it did not fail in its duty to consider the bonus issue.

Plaintiff's argument may also be understood to challenge the reasonableness of DuPont's exercise of discretion in deciding whether to award a bonus. As noted above, the contract provided that Fremont would be eligible for a bonus if DuPont won or successfully settled the litigation. Defendant argues that (1) DuPont enjoyed unfettered discretion under the contract to determine whether to award a bonus, and (2) because the litigation did not conclude successfully, the decision to deny the bonus was proper.

Although I conclude, in agreement with the second of these arguments, that no implied duty was breached here, nothing in this opinion should be understood as endorsing the contention that DuPont had complete discretion to deny the bonus. As explained at length above, both Pennsylvania and Delaware would impose the duty of good faith and fair dealing in this setting. From its earliest appearance in contract law, the implied duty was held to require "reasonable efforts" when a contract allows one party discretion that affects the other party's benefit from the contract. *See Wood v. Lucy, Lady Duff-Gordon,* 222 N.Y. 88, 118 N.E. 214 (1917). However, it is clear from the record that defendant satisfied the implied duty here.

**6.** In discussing the duty of good faith, plaintiff also makes reference to a case regarding the closely related doctrine of necessary implication. *Daniel B. Van Campen Corp. v. Building & Constr. Trades Council,* 202 Pa.Super. 118, 195 A.2d 134, 136–37 (1963) ("[T]he law will imply an agreement by the parties to a contract to do and perform those things that according to reason and justice they should do in order to carry out the purpose for which the contract was made

and to refrain from doing anything that would destroy or injure the other party's right to receive the fruits of the contract."). This doctrine has an analogue in Delaware law as well. *See Danby v. Osteopathic Hospital Ass'n of Del.,* 101 A.2d 308 (Del.Ch.1953). There is no need to explore whether or to what extent the doctrine of good faith and the doctrine of necessary implication differ, as they both lead to the same result here.

Defendant has offered affidavits, memoranda, and account sheets showing that at the time of the settlement, DuPont's expenditures for the GAF litigation, including fees paid to the corporation's outside counsel, amounted to $1,118,742.00. Defendant's documentary evidence also indicates that the savings from the settlement have now been fully realized and that those savings, less DuPont's out-of-pocket legal expenses, amounted to approximately $6,000.00.[7] Finally, defendant's evidence indicates that as a result of this settlement, no DuPont employee was found deserving of a bonus in connection with the GAF litigation. Plaintiff has raised no substantial challenge to these documents, much less proffered any evidentiary material casting any doubt on them. Therefore, it is apparent from this record that DuPont made a reasonable determination that the litigation was not successful, and accordingly satisfied its duty of good faith.

### D. Remaining Contract Arguments

Plaintiff's memorandum in opposition to summary judgment also raises a number of other contract law arguments: (1) that the writings proffered by defendant do not identify themselves as a contract, (2) that no single document bears both parties' signatures, (3) that there is no evidence that the parties intended such writings to constitute an integrated agreement, and (4) that there are further oral terms of the contract. These issues merit less discussion.

No support is offered, nor could the court find any, for the implicit proposition that a contract evidenced by a writing requires (1) that the writing identify itself as a contract or (2) that a single document bear both parties' signatures. Furthermore, although defendant argues that there is no agreement beyond that which is evidenced by the writings, the integration issue is inapposite, as there is no disagreement on the terms of the contract.

▮ Finally, plaintiff's suggestion that there are additional oral terms fails as he has not specifically alleged any such terms, let alone offered evidence in support thereof. To defeat a motion for summary judgment a party may not simply rest on allegations in the pleadings without "any significant probative evidence tending to support the complaint." *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 290, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968).

Plaintiff contends that he must be allowed to proceed to discovery in order to gather such evidentiary support. This argument, too, fails to persuade. Although a court might be hesitant to grant summary judgment on an undeveloped record where there appear to be significant differences between the parties on the relevant facts, no such situation is presented here. First, as noted above, plaintiff's essential construction of the agreement does not vary in any material way from defendant's. DuPont has accepted the existence of an agreement with the same relevant terms articulated by the plaintiff. To the extent that plaintiff appears to be arguing that there were as-yet unspecified oral terms of the contract, the argument has even less appeal. Since such oral terms must, by definition, have been communicated to the plaintiff, no discovery would be necessary to support the existence of such terms; such terms could be testified to by Fremont. No such support has been forthcoming from plaintiff. In fact plaintiff has failed to provide any exhibits, documents, or affidavits in this matter. Moreover, plaintiff does not allege, and there is no indication, that discovery could not have been pursued heretofore during the pendency of this case.[8]

---

7. Plaintiff, unsurprisingly, has nowhere argued that he is entitled to a bonus of 1% of this figure.

8. Plaintiff also argues that he must be allowed to proceed because discovery could disclose a course of dealings that would support his asserted entitlement to an award. This argument fails for the same reasons. Plaintiff has alleged that he has received a bonus in the past. Even if one overlooks the lack of any support for this statement, plaintiff has alleged nothing that establishes his entitlement to a bonus under the circumstances of this case. The mere fact, if it be the fact, that at some point in time an award was granted for reasons unknown does not tend to establish a course of dealings indicating that recovery on this contract is appropriate.

## Conclusion

In sum, upon consideration of the briefs and the record, it is apparent that DuPont has violated no contractual duty, express or implied, owing to plaintiff. Therefore, defendant's motion for summary judgment will be granted.