■ LEWIS SMALL, Individually and as Trustee of the RICHARD SMALL VOTING TRUST and the AMERICAN INDEPENDENT COMPANY VOTING TRUST, et al., Appellants, v ARCH CAPITAL GROUP, LTD., et al., Respondents. [925 NYS2d 498]—

Judgment, Supreme Court, New York County (Richard B. Lowe, III, J.), entered April 19, 2010, dismissing the complaint and bringing up for review orders, same court and Justice, entered on or about March 15, 2010, which granted defendants' motions for summary judgment, unanimously affirmed, with costs. Appeal from the aforesaid orders, unanimously dismissed, without costs, as subsumed in the appeal from the judgment.

Plaintiffs failed to raise a triable issue of fact whether defendants breached section 9.10 of the parties' agreement by preventing plaintiff Lewis Small from managing the lawsuits (as defined in the agreement) and a directors' and officers' liability claim (the D&O claim) under the insurance policies of American Independent Insurance Holding Company, the predecessor to defendant American Independent Companies, Inc.

With respect to the D&O claim, section 9.10 states, in pertinent part, that "Small will continue to assist and manage the Lawsuits." "Lawsuits" are defined in the agreement as "the State Lawsuits together with the Lederman Lawsuits and any other lawsuits or other actions which may arise out of or be in relation to or in connection with such lawsuits." A claim submitted to an insurance company is not a "lawsuit[ ]," nor is the D&O claim an "action," within the meaning of the agreement (*see Peterson v Continental Cas. Co.*, 282 F3d 112, 119-120 [2d Cir 2002]).

With respect to the lawsuits, the only concrete management issues about which plaintiffs complain are that defendants took

a long time to agree with Small's decision to replace American's lead counsel in the Lederman lawsuit and did not agree that certain witnesses should be listed in that lawsuit. However, section 9.10 (ii) states, in pertinent part, that "the prior written approval of [American] and [defendants TDH Capital Partners and TDH III, L.P.] will be required for any strategic decisions relating to the Lawsuits, including without limitation . . . the selection or removal of legal counsel." Thus, the plain language of the agreement forecloses plaintiffs' claim about lead counsel. On appeal, plaintiffs concede that listing witnesses is a strategic decision. Accordingly, their claim about listing witnesses is also precluded by the language of the agreement.

Plaintiffs failed to raise a triable issue of fact whether defendants breached section 9.10 (iv) of the parties' agreement, which states that American "will continue to fund reasonable fees and reasonable expenses of the Lawsuits (based on appropriate supporting written invoices) up to a maximum of $500,000." Plaintiffs' theory of damages is that, because the funding for the Lederman lawsuit dried up, they lost the opportunity to recover damages in that lawsuit. However, the plain language of section 9.10 (iv) shows that the TDH defendants had no funding obligation, and we disagree with the District Court that section 9.10 does not make clear what it means for American to "continue to fund reasonable fees and reasonable expenses of the Lawsuits (based on appropriate supporting invoices) up to a maximum of $500,000" (see Small v Arch Capital Group, Ltd., 2006 WL 2708448, *13, 2006 US Dist LEXIS 67910, *39 [SD NY 2006]). It is true, as the District Court noted, that the parties dispute the contractual language of section 9.10. The plain language of the section, however, warrants dismissal of plaintiffs' breach of contract cause of action. With respect to American and defendant Arch, which acquired 100% of American's shares pursuant to the parties' agreement, plaintiffs concede in paragraph 216 of their complaint that "the loss of the value of their respective shares of the proceeds from the Lederman Lawsuit" constitutes "consequential damages." Even if there were a triable issue of fact whether American and/or Arch fulfilled the funding obligation, it would not avail plaintiffs because they have not satisfied the requirements for consequential damages (see Kenford Co. v County of Erie, 73 NY2d 312, 320 [1989]).

Plaintiffs failed to raise a triable issue of fact whether defendants breached the implied covenant of good faith and fair dealing by bad faith exercise of their contractual right to approve strategic decisions. Plaintiffs' theory is that Arch caused Ameri-

can to abandon the Lederman lawsuit because Rockwood Casualty Insurance Co. (one of the defendants in that lawsuit) was part of Argonaut Insurance Group, Inc., and Arch wanted to do reinsurance business with Argonaut. However, plaintiffs have presented no evidence as to why TDH would fail to prosecute the Lederman lawsuit. Unlike plaintiffs, who got at least some cash from the sale of their American shares to Arch, TDH's contractual right to be compensated came solely from the proceeds of the lawsuits. Thus, TDH had every incentive to prosecute the Lederman lawsuit vigorously (*see Fremont v E.I. DuPont DeNemours & Co.*, 988 F Supp 870, 877 [ED Pa 1997]).

As for Arch, the facts do not support plaintiffs' theory. When Arch and American learned that Argonaut had purchased Rockwood's parent, they both deemed it a positive development because it might mean that Lederman had some money that American could pursue. Moreover, the facts do not support plaintiffs' chronology. According to plaintiffs, Arch caused American to abandon the Lederman lawsuit from late April 2001. However, Arch did not begin its efforts to acquire reinsurance business in general until late October or November 2001, and it did not know about the specific possibility of underwriting reinsurance for Argonaut until late 2001. Concur—Sweeny J.P., Acosta, Renwick and DeGrasse, JJ. **[Prior Case History: 2010 NY Slip Op 30535(U).]**